IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| A.G.,[1] | § |
| Plaintiff, | § § § |
| v. | §  3:24-CV-266-S-BR |
| MARTIN O'MALLEY, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | § § § § § |
| Defendant. | § § |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO AFFIRM THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff A.G. ("Plaintiff") seeks judicial review of the decision of the Commissioner of Social Security ("Defendant"), who denied Plaintiff's applications for disability insurance benefits under Title II and for supplemental security income under Title XVI of the Social Security Act ("SSA") for lack of disability. (ECF 1; ECF 10-1 at 7-30). After considering the pleadings, briefs, and administrative record, the undersigned RECOMMENDS that the United States District Judge AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint with prejudice.

## I.  BACKGROUND

Plaintiff filed a claim for Title II disability and disability insurance benefits on December 19, 2019, and for supplemental security income on April 4, 2020. (ECF 13 at 1; ECF 10-1 at 339-46). Plaintiff alleged disability due to congestive heart failure, hypertension, obesity, abnormal

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion.

thyroid stimulating hormone, hyperthyroidism, hyperglycemia, major depressive disorder, anemia, systemic inflammatory response syndrome, history of hypothyroidism, and acute pulmonary embolism, with an alleged onset date of June 1, 2018. (ECF 10-1 at 13). Plaintiff was born on October 20, 1960, was 59 years old at the time he filed his claim, and has at least a high school education. (*Id.* at 23).

Plaintiff's application was originally denied on October 23, 2020, and again on reconsideration on March 1, 2021. (ECF 10-1 at 10). Plaintiff requested a hearing, which was held before the Administrative Law Judge ("ALJ") on February 2, 2023. (*Id.* at 10). Plaintiff did not attend this hearing due to adverse weather. (*Id.*). The ALJ ordered a consultative examination, which was scheduled for March 3, 2024. (*Id.*). Plaintiff did not appear for the consultative examination, and states in his Opening Brief that he "*may* have been . . . incarcerated" on the day the examination was scheduled. (*Id.*; ECF 13 at 2-3) (emphasis added). A second telephone hearing was held on July 6, 2023. (ECF 10-1 at 10). Plaintiff, represented by his attorney, did not raise or renew any request for a consultative examination at this hearing, and the ALJ did not order or schedule another consultative examination. (*See* ECF 10-1 at 49-89). The ALJ issued an unfavorable decision on August 29, 2023, finding Plaintiff not disabled under Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (*Id.* at 10-24).

At step one of the five-step sequential evaluation,[2] the ALJ found that the claimant did not engage in substantial gainful activity in his work performed from June 1, 2018, through December

---

[2] "In evaluating a disability claim, the [ALJ] conducts a five-step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Id.* at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67

31, 2022. (ECF 10-1 at 13). However, the ALJ found that the earnings reported by Plaintiff constituted substantial gainful activity beginning on January 1, 2023, and continuing through the present. (*Id.*). At step two, the ALJ found that Plaintiff has several "severe impairments": congestive heart failure ("CHF"), hypertension, obesity, thyroid mass, hyperthyroidism,[3] and acute pulmonary embolism. (*Id.* at 13-15). At step three, however, the ALJ found that Plaintiff's impairments—or combination of impairments—did not meet or medically equal the severity of any listed impairment in the social security regulations. (*Id.* at 15-16). At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as a security guard and mechanic. (*Id.* at 22-23). At step five, the ALJ determined that, considering the claimant's age, education, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.* at 23-24). The ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and therefore is not disabled within the meaning of the Social Security Act. (*Id.* at 24).

The Appeals Council denied Plaintiff's request for review on December 6, 2023. (ECF 10-1 at 1-6). Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *See* 42 U.S.C. §§ 405(g), 1383(c); *Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) ("[C]ourts generally agree that when the Appeals Council denies a request

---

F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)). Before proceeding to steps four and five, the Commissioner must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

[3] Plaintiff's medical records include treatment for both hypothyroidism and hyperthyroidism. (*See* ECF 20-1 at 606-07). The ALJ found Plaintiff's hyperthyroidism was a severe impairment, but she found that Plaintiff's hypothyroidism was not a medically determinable impairment. (*Id.* at 13-14).

for review, the ALJ's decision becomes the Commissioner's final decision.") (quoting *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005)).

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b).

In reviewing disability determinations by the Commissioner, the court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997).

To determine whether substantial evidence of disability exists, the court must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir.

1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the court finds substantial evidence to support the Commissioner's decision, the court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### III. <u>DISCUSSION</u>

In his Opening Brief, Plaintiff requests that the Court remand this case for further proceedings, asserting that the ALJ failed to fully and fairly develop the record when she did not order a second consultative examination. (ECF 13 at 5-11).

#### A. The ALJ properly developed the record and did not err in exercising her discretion not to order a second consultative examination.

The ALJ has a duty to fully develop the record when evaluating an applicant's claim for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). An ALJ's duty to develop the record is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001). The decision whether to order a consultative examination to aid in developing the record falls within the discretion of the ALJ. 20 C.F.R. §§ 404.1519a, 416.1919a. The controlling regulation states that an ALJ "may ask [a claimant] to undergo a consultative examination" if the agency has "insufficient evidence to determine whether [a claimant is] disabled, or if after weighing the evidence [the agency] cannot reach a conclusion about whether or not [a claimant]

5

is disabled." 20 C.F.R. § 1520b(c)(3). An ALJ therefore is not required to order a consultative examination where the record is already complete. *See, e.g.*, *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (noting that the agency's duty to develop the record is satisfied where the ALJ reaches "an informed decision based on specific facts").

The Fifth Circuit has held that "the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. 2005) (slip copy) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Courts instead look to whether substantial evidence exists in the record to support the ALJ's decision. *Id.*; *see Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) ("[T]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision."). An ALJ may properly make a disability determination that does not expressly adopt any medical opinion when it is based on substantial evidence. *See Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (finding that although the ALJ did not adopt the state agency report or accept the testimony of a medical provider, this did not preclude a finding that his decision was based on substantial evidence); *Joseph-Jack v. Barnhart*, No. 03-30277, 80 F. App'x 317, 318 (5th Cir. 2021) (rejecting the argument that the ALJ was not competent to assess the RFC because the record did not contain an RFC assessment by a medical source).

When making an RFC assessment, although an ALJ "must be careful not to succumb to the temptation to play doctor" or make independent medical assessments, *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003), "[i]t is the responsibility of the ALJ to interpret the medical evidence to determine a claimant's capacity for work." *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (cleaned up); *see Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) ("[T]he ALJ used

6

the medical information provided . . . to determine [the RFC] . . . [which] is the sole responsibility of the ALJ. What [claimant] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.") (citations omitted).

Reversal of an ALJ's decision "is appropriate only if the applicant shows that he was prejudiced." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). To show that she was prejudiced, a plaintiff must show that had the ALJ done her duty, "she could and would have adduced evidence that might have altered the result." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984).

Here, there was substantial evidence in a sufficiently developed record to support the ALJ's decision. The ALJ reviewed Plaintiff's medical records dating from 2018 through 2023 and considered the findings of Plaintiff's treating sources, Plaintiff's testimony, and the 2020 and 2021 findings of the state agency medical reviewers[4] in assessing Plaintiff's RFC. (ECF 10-1 at 16-22). The ALJ noted that here, Plaintiff's medical records reflect "[g]enerally normal physical examinations except for thyroid mass and elevated BMI," as well as "reduced LVEF and bloodwork demonstrating hyperthyroidism." (ECF 10-1 at 18).

On December 20, 2018, Plaintiff established care at Baylor Scott & White Community Care with "no significant past medical history." (ECF 10-1 at 684). At that visit, the treating physician noted congestive heart failure with left ventricular ejection fraction ("LVEF") of 40%

---

[4] "Medical opinions" and "prior administrative medical findings" are two distinct categories of evidence under 20 C.F.R. § 404.1513(a). While there are no medical opinions in this case, the determinations of the state agency medical reviewers fall into the category of prior administrative medical findings. *Id.* Here, a state agency medical reviewer first found in October 2020 that there was insufficient evidence to evaluate Plaintiff's disability claim. (ECF 10-1 at 91-100). That decision was reviewed and affirmed by a second state agency medical reviewer in February 2021. (*Id.*). The ALJ found these administrative findings unpersuasive, and relied on more recent records obtained after the state agency medical reviewers evaluated Plaintiff's case in order to find that the claimant has physical impairments that limit him to a reduced range of medium work. Plaintiff's medical records from September of 2021 and April of 2023 were not before the state agency medical reviewers, nor were they before the ALJ at the time she ordered a consultative examination. (ECF 10-1 at 38-39).

on an electrocardiogram ("ECG") and an elevated A1C. (*Id.* at 684-85). The treating physician also noted the presence of a mass over Plaintiff's thyroid and "controlled" hypertension. (*Id.*). The treating physician recommended that Plaintiff undergo a follow-up ECG, but Plaintiff did not seek this treatment. (*Id.*). In January of 2019, Plaintiff's treating physician noted that Plaintiff reported "feeling well," and was experiencing "[n]o shortness of breath, chest pain, or other related symptoms." (*Id.* at 624). Plaintiff reported "well-controlled blood pressure readings at home." (*Id.*). In March of 2019, Plaintiff again reported "[n]o shortness of breath, chest pain, or other related symptoms," was "doing well with chronic pain," and had "well-controlled blood pressure readings at home." (*Id.*). In May of 2019, Plaintiff's treatment notes reflect that he "refused to pursue [an ENT specialist regarding the mass in his neck] despite counseling on risks." (*Id.*).

From August through December of 2019, Plaintiff's treatment notes state that he was "doing well" and "feeling well without any symptoms" except for complaints of rash, back pain, and a recent-onset upper respiratory infection. (*Id.* at 624-25). Plaintiff "denie[d] any new symptoms" in January of 2020, and his treating physician reported that Plaintiff's hypertension is "controlled" with "no anxiety or palpitations," and that "current treatment provides significant improvement," although Plaintiff has issues with medication and treatment compliance due to "medication cost and psychosocial issues." (*Id.* at 625). Approximately eight months later, in September of 2020, Plaintiff's treatment notes reflect that he "has been instructed to transition his care to Parkland for management of thyroid mass since 2018," but "has not followed through with those recommendations." (*Id.* at 614). At that visit, Plaintiff reported that "he overall feels well except for the significant neck mass and associated symptoms which are unchanged." (*Id.*). The notes also state that Plaintifff's hypertension is "controlled," and Plaintiff reported "no anxiety, chest pain, headaches, palpitations or shortness of breath." (*Id.*). Plaintiff underwent a psychosocial

8

assessment with a case manager, who noted Plaintiff's mild depression, in October of 2020. (ECF 10-1 at 20).

Following a gap in treatment of about eleven months, Plaintiff underwent a physical examination in September of 2021, where he did not present with any cardiac or respiratory symptoms. (*Id.* at 751). This examination noted the presence of Plaintiff's thyroid mass, thyromegaly, and thyroid tenderness. (*Id.*). After this examination, there was yet another gap of more than eighteen months until Plaintiff next sought treatment. (*Id.*). On April 5, 2023, Plaintiff presented to the emergency room from jail with hematemesis, dark stool, and syncope, which were diagnosed as a Mallory-Weiss tear and ulcer. (*Id.*). At this time, Plaintiff's physical examination was largely normal except for the unchanged thyroid mass and abdominal tenderness, as well as low thyroid stimulating hormone ("TSH") level. (*Id.*).

The above excerpts reflect—as the ALJ noted—generally normal physical examinations with "asymptomatic CHF and controlled hypertension when medication compliant" and a thyroid mass that has been present for many years. (ECF 10-1 at 19). The ALJ also noted that significant gaps in treatment—an eight-month gap from January to September 2020, an eleven-month gap from October 2020 to September 2021, and an eighteen-month gap from September 2021 to April 2023—Plaintiff's failure to escalate treatment[5] of his thyroid mass and cardiac issues to specialists,

---

[5] "Failure to seek treatment is relevant in determining whether disability exists and is an indication of nondisability." *Minor v. Comm'r of Soc. Sec. Admin.*, No. 3:07-CV-915-G, 2008 WL 2894681, at *9 (N.D. Tex. July 21, 2008) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)); *see Doss v. Barnhart*, No. 04-50814, 2005 WL 1463178, at *1 (5th Cir. 2005) ("[Plaintiff's] failure to seek treatment for depression is an indication of nondisability."). When a claimant cannot afford prescribed treatment and "can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Minor*, 2008 WL 2894681, at *9 (citing *Wingo v. Bowen*, 852 F.2d 827, 831 (5th Cir. 1988)). As in *Minor*, here, Plaintiff "continued to seek sporadic treatment from various sources" for his medical impairments, and "received medical treatment over the course of several years" for various impairments. *Minor*, 2008 WL 289461, at *9. Plaintiff likewise "presented no evidence that [he] exhausted options for free or low-cost treatment or medications." *Id.; see Chandler v. Saul*, No. 3:19-CV-1266-BH, 2020 WL 6321918, at *8 (N.D. Tex. Oct. 27, 2020) (noting that "inability to afford treatment by itself is insufficient," and a "claimant must also show that he could not obtain medical treatment from other sources, such as free or low-cost health clinics"). It is therefore proper for the

medication noncompliance, and the fact that Plaintiff was engaged in substantial gainful activity beginning January 1, 2023, were all factors supporting her RFC finding. (ECF 10-1 at 13, 19).

Plaintiff testified that he has worked part-time at Magic Building Service since about May 2022. (ECF 10-1 at 55-57). He stated that in this job, he performs general cleanup, typically sits down to wait for people to come into the convention center, and cleans up the bathrooms. (*Id.* at 20, 55-57). He testified that sometimes he leaves work early because he doesn't feel well but is able to take breaks as needed. (*Id.*). Plaintiff stated that he is able to perform all of his personal care, like getting dressed, getting into and out of the shower, and cooking himself meals, but does not shop for his own groceries because he is nervous to drive or go out to the store. (*Id.*).

Although ordering a second consultative examination may have helped to fill in some of the gaps with regard to Plaintiff's medical history, it was not *necessary* to enable the ALJ to make the disability determination in this case. *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016); *see Ruthie L.G. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-2585-BK, 2024 WL 731940 (N.D. Tex. Feb. 21, 2024) (finding that where the ALJ reviewed the plaintiff's medical records dating from 2019 through 2022, the findings of the plaintiff's treating sources, and the plaintiff's testimony, and considered—but declined to adopt—the state agency medical consultants' opinions, the ALJ's decision was based on substantial evidence). As detailed above, Plaintiff's medical records—viewed as a whole—provided an adequate basis for the RFC. Records spanning years reflect Plaintiff's cardiac issues were largely asymptomatic and controlled by medication, and that the limiting effects of Plaintiff's thyroid mass have likewise remained unchanged, and

---

ALJ to consider Plaintiff's failure to seek treatment when evaluating Plaintiff's disability. *See Minor*, 2008 WL 289461.

were accounted for in the ALJ's RFC determination. Plaintiff's own testimony shows that he is able to care for himself, perform basic chores, and work a part-time job as a cleaner.

Further, when an applicant "does not have a good reason for failing or refusing to take part in a consultative examination, the agency may find that the claimant is not disabled." *Cavazos v. Comm'r of Soc. Sec.*, No. 4:22-CV-01347, 2023 WL 6393884, at *4 (S.D. Tex. Sept. 29, 2023) (citing 20 C.F.R § 404.1518(a)); *see also Antoine v. Comm'r of Soc. Sec.*, No. 14-3381, 2016 WL 4574566 (W.D. La. June 29, 2016) (holding that the claimant's argument that the ALJ failed to fully develop the record lacked merit where the claimant "failed to attend a scheduled consultative exam and did not return his Activities of Daily Living Form, despite repeated requests"); *Thomas v. Colvin*, No. 15-0026, 2016 WL 1020749, at *12-13 (W.D. La. Feb. 2, 2016) ("[P]laintiff's unexcused failure to attend the consultative examinations, alone, provides alternative grounds to support the Commissioner's determination that his disability ended."); *and Jamison v. Colvin*, Civil No. SA-15-CA-166-JWP, 2015 WL 5822592 (W.D. Tex. Oct. 5, 2015) (holding that when the plaintiff did not attend the consultative examination set by the ALJ, plaintiff's counsel did not request a new examination date, and plaintiff's counsel did not provide an explanation for plaintiff's failure to appear, the ALJ fulfilled his duty to develop the record).

At the hearing held on July 6, 2023—after Plaintiff failed to appear for the consultative examination scheduled for March 3, 2023—neither Plaintiff nor his counsel raised or renewed the request for a consultative hearing. (*See* ECF 10-1 at 53-96). In his opening brief, Plaintiff only states that he "may have been . . . incarcerated" on the date the consultative examination was scheduled.[6] As the ALJ noted, the medical records discussed above, Plaintiff's failure to attend the

---

[6] On April 5, 2023, when Plaintiff was taken to the emergency room from jail, he reported that he had been in jail for five to six days. (ECF 10-1 at 508). Plaintiff has not definitively asserted that he was in jail on the date the consultative was scheduled.

consultative exam, and Plaintiff's failure to seek treatment all support the assertion that "the claimant's statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (ECF 10-1 at 18).

Again, while the record may lack a medical opinion, this does not change the analysis. *See Johnny M. v. Saul*, No. 5:20-CV-173-BR, 2022 WL 9597736, at *4 (N.D. Tex. Jan. 21, 2022) ("Although there is no medical source statement describing the types of work Plaintiff can perform, the ALJ's RFC determination is supported by substantial evidence . . ."); *Myers v. Saul*, No. SA-20-CV-00445-XR, 2021 WL 4025993, at *8 (W.D. Tex. Sept. 3, 2021) (finding substantial evidence supported RFC determination, even without a medical opinion on the plaintiff's ability to work); *Gonzalez v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *9 (N.D. Tex. Jan. 11, 2016) (finding substantial evidence supported RFC determination, even though record contained no medical opinion regarding the plaintiff's ability to work, where no treating physician recommended any serious restrictions). This Court is not engaging in a *de novo* review of the Commissioner's decision, and cannot substitute its judgment for the Commissioner's; rather, this Court looks only to whether substantial evidence supports the findings of fact made by the ALJ. *See Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Here, there is "more than a scintilla" of evidence in the record to support the ALJ's RFC determination. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).

## V. RECOMMENDATION

It is the recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding A.G. not disabled and not entitled to disability benefits be AFFIRMED and that his complaint be DISMISSED WITH PREJUDICE.

## VI.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these findings, conclusions and recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 13, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).